**Kelly A. CHAPMAN, Plaintiff–
Appellant,**

v.

**Janice LILAC et al., Defendants–
Appellees.**

No. 00–3302.

United States Court of Appeals,
Sixth Circuit.

March 20, 2001.

Before KEITH, NORRIS, and
DAUGHTREY, Circuit Judges.

PER CURIAM.

The plaintiff, Kelly Chapman, appeals from an order of summary judgment on grounds of qualified immunity for the defendants, Janice Lilac and Carolyn Claypool, on Chapman's claim under 42 U.S.C. § 1983 that Lilac and Claypool violated Chapman's Fourteenth Amendment right to due process of law. Lilac is an Ashtabula County Children Services Board caseworker; Claypool is an Ashtabula County Detective Deputy Sheriff. Chapman claims that the defendants improperly removed her daughter, Jillian Chapman Pope, from her custody, pursuant to an *ex parte* order of the Ashtabula County Common Pleas Court, Juvenile Division. We find no error in the judgment entered by the magistrate judge, sitting by consent as the district court in this case and affirm.

On January 29, 1996, Chapman contacted the Ashtabula County Children Services Board to report that upon returning from a visit to her father, Tom Pope, her daughter Jillian had asked to take a bath and said that "Daddy hurt [her] pee pee." Lilac was assigned Chapman's case and directed Chapman to take the child to her family physician. The physician examined Jillian and told Lilac she could not determine whether any sexual abuse of the child had taken place. Lilac then arranged for Chapman to take Jillian to a second doctor, Dr. Pam Namee, on February 5th or 6th. In the interim, Lilac interviewed the child's family members and became concerned that Jillian and Chapman's other children had been exposed to numerous vaginal exams and child abuse screenings. Lilac also developed concerns about Chapman's credibility in light of an ongoing contentious custody battle with Pope. On February 1, Lilac was contacted by the Erie Police Department and told that Chapman had brought Jillian to the Hamot Medical Center for a rape examination.

Lilac then met with her supervisors and Claypool to present Chapman's case and, as a result of that meeting, obtained an *ex parte* order from the Ashtabula County Common Pleas Court, Juvenile Division, to remove Jillian from Chapman's custody. The district court noted that at the time the state court issued its order, that court had before it as evidence "twenty-two police reports of allegations of sexual abuse, thirteen examinations of the child for sexual abuse (and another one scheduled for February 5th or 6th), as well as other information impacting plaintiff's credibility."

Six months later, a permanent custody hearing took place, after which custody of Jillian was granted to her father. The district court noted that at the custody hearing, the court "relied heavily on the testimony of Dr. Harold Fisher, who had examined the entire family ... over the course of several years" and, although he had originally suspected Pope of sexually abusing Jillian, was now of the opinion that "plaintiff was preoccupied with the subject [of sexual abuse], which caused her to expose her child to repeated vaginal examinations" and that "plaintiff suffered from mental illness, including aggressive schizoid personality and compulsive personality, with a tendency to form obsessive thoughts." The juvenile court's decision was affirmed by the Eleventh District Court of Appeals.

Chapman filed the instant case in March 1998, claiming that in removing Jillian from her custody, Lilac and Claypool violated her right to due process of law; committed tortuous failure to investigate statutory child abuse reports under Ohio Revised Code §§ 2151.421(F) and 5153.16(B)(1); and negligently knocked her to the ground, causing her to suffer a miscarriage. Chapman did not oppose the district court's dismissal of her second and third claims.

The district court granted summary judgment to the defendants on Chapman's due process claim, finding that Lilac and Claypool were both entitled to qualified immunity for their actions. The district court held that "[i]n removing the plaintiff's daughter from her custody Ms. Lilac and Detective Deputy Sheriff Claypool were executing a facially valid court order (the *ex parte* emergency order which was reviewed in, and upheld following, a full evidentiary hearing in the juvenile court and affirmed upon appeal from that court's decision). Plaintiff has not cited any precedent holding that under such circumstances a reasonable public official could/ should have considered that action as interfering with a constitutionally protected parental right."

Chapman now argues, as she apparently also did below, that Lilac and Claypool are not entitled to qualified immunity because the court order they were executing was, in fact, invalid. She bases this conclusion on a supposition that Lilac and Claypool tampered with evidence used in obtaining the order by switching the pair of panties submitted to the Hamot Medical Center during Jillian's examination for rape and kept as part of the resulting rape kit. Chapman also claims that Claypool acted contrary to official policy by taking 30 hours to submit the rape kit to her department's evidence custodian. However, Chapman made no mention of these allegations in her complaint, nor did she present any evidence to support them in the record presented to this court. Lilac and Claypool argue in response that they did not tamper with the rape kit, that the panties obtained with the rape kit were far too large for a child of Jillian's age, and that their return of the rape kit to evidence was in accordance with departmental policies.

The district court was "completely unimpressed with or unpersuaded by the apparently newly formed contention, un-

supported by any other evidence, that the defendants somehow 'switched' a pair of panties secured by them in the course of their investigation into the alleged rape of Jillian so as to mount evidence against the plaintiff in order to vindicate their decision to remove Jillian from her custody, particularly considering that there is no evidence of the assertion of that claim in the state courts and in light of the extensive record [of] evidence supportive of the decision of the juvenile court."

Having studied the record on appeal and the briefs of the parties, we are not persuaded that the district court erred in dismissing the complaint. Because the reasons why judgment should be entered for the defendants have been fully articulated by the district court, the issuance of a detailed opinion by this court would be duplicative and would serve no useful purpose. Accordingly, we AFFIRM the judgment of the district court upon the reasoning set out by that court in its memorandum opinion filed February 22, 2000.